UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MARCUS T. BARTOLE, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:24-CV-633-GSL-AZ |
| STATE OF INDIANA, et al., | |
| Defendants. | |

OPINION AND ORDER

Marcus T. Bartole, a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

In the complaint, Bartole challenges the constitutionality of the Indiana bail scheme. Under Indiana law, bail may be set on a person arrested for an offense "for the purpose of ensuring the person's appearance at the appropriate legal proceeding, another person's physical safety, or the safety of the community." Ind. Code. § 35-33-8-1. "[T]he court shall order the amount in which a person charged by an indictment or information is to be held to bail." Ind. Code § 35-33-8-4(a). "Bail may not be set higher

than that amount reasonably required to assure the defendant's appearance in court or to assure the physical safety of another person or the community if the court finds by clear and convincing evidence that the defendant poses a risk to the physical safety of another person or the community." Ind. Code § 35-33-8-4(b). In setting the amount of bail, courts must consider the defendant's relationship to the community, his financial ability to post bail, his criminal history to the extent it implicates "instability or disdain for the court's authority to bring the defendant to trial," prior failures to make court appearances, the nature and gravity of the charges offenses and potential penalties to the extent they are "relevant to the risk of nonappearance," and the source of funds used to post bail to the extent "it affects the risk of nonappearance." *Id.*

"Upon a showing of good cause, the state or the defendant may be granted an alteration or revocation of bail by application to the court before which the proceeding is pending. In reviewing a motion for alteration or revocation of bail, credible hearsay evidence is admissible to establish good cause." Ind. Code. § 35-33-8-5. Under Indiana law, "the denial of a motion to reduce bail is a final judgment appealable as of right." *Sneed v. State*, 946 N.E.2d 1255, 1256 n.1 (Ind. Ct. App. 2011) (citing *State ex rel. Peak v. Marion Crim. Ct., Div. One*, 203 N.E.2d 301, 302 (Ind. 1965)).

The Tippecanoe Superior Court has issued Local Rule LR79-CR26-16[1] setting a bail schedule for the Sheriff's Department to follow in the absence of a court order for

---

[1] The Tippecanoe County Local Rules of Court are available at https://www.tippecanoe.in.gov/DocumentCenter/View/44331/Tippecanoe-County-Local-Rules-of-Court.

those arrested without warrant. For example, the local rule requires $1,500 cash and $15,000 surety for Level 3 felonies and $250 cash for misdemeanors. It does not allow the sheriff to release individuals arrested for rape on bail without a court order but requires a bail hearing before a judge within 48 hours or by the next working day. It further allows judges to deviate from the bail schedule based on evidence and the parties' arguments.

According to the complaint and the electronic dockets for the State courts, the following occurred.[2] On November 13, 2021, Bartole was arrested for the offenses of rape, failure to register as a sex offender, strangulation, criminal confinement, and battery. On November 14, 2021, the Tippecanoe Superior Court found probable cause and set bond in the amount of $15,000 cash and $150,000 surety in Case No. 79D04-2111-MC-1112.[3]

On November 17, 2021, the prosecution initiated Case No. 79D04-2111-F3-33, charging Bartole with rape, knowing or intentional failure to register as a sex or violent offender, sexual battery, strangulation, confinement, and battery resulting in bodily injury. The prosecution noted that the standard bond for such charges was $1,500 cash and $15,000 surety but requested $15,000 cash and $150,000 surety. In support, the

---

[2] Pursuant to Fed. R. Evid. 201, the court takes judicial notice of the electronic dockets for the Indiana courts, which are available at https://public.courts.in.gov/mycase/.

[3] "A cash bond must be posted using the total amount of cash." Indy.gov, *Bond Types and Payments*, https://www.indy.gov/activity/bond-types-and-payments (last visited August 15, 2024). "Once the case is resolved, a cash bond can be refunded if there are no fees, fines, and/or restitution owed." *Id.* "Surety bonds are 10 percent of the total bond ordered in a case and must be posted with a licensed bail agent." *Id.* "The bondsman then posts bail with the court on your behalf." *Id.* "This type of bond is not refundable." *Id.*

prosecution cited three prior unrelated felony convictions, that Bartole was on probation when he committed the charged offenses, that he had few ties to the community, presented a danger to himself and others, and was a convicted sex offender. The Tippecanoe Superior Court found probable cause to support the charges and set bond in the amount of $4,000 cash and $40,000. In the same order, the Tippecanoe Superior Court invited the parties to raise objections to the order in writing within fifteen days.

In February 2022, the prosecution charged Bartole as a habitual offender, and the Tippecanoe Superior Court kept bond at the same amount at another initial hearing. On January 9, 2023, Bartole filed a motion for a bond hearing. On January 26, 2023, the Tippecanoe Superior Court heard evidence on the motion and denied it on February 3, 2022.

On May 23, 2023, Barole filed a motion for bond reduction, and the Tippecanoe Superior Court conducted a hearing on June 2, 2023. On July 5, 2023, the Tippecanoe Superior Court ruled as follows:

> Initially, the Court notes, among other relevant factors, the results of the Tippecanoe County Community Corrections Pre-Trial Services Risk Assessment. Said Assessment, dated January 25, 2023, indicates Defendant's risk level to be moderate. Further, the Defendant is not eligible for Tippecanoe County Community Corrections Pre-Trial Services. In addition, the Court has considered all facts relevant to the risk of the Defendant's nonappearance. More particularly the Court has considered the length and character of the Defendant's residence in the community; the Defendant's employment status and history; the Defendant's criminal history and juvenile record; the Defendant's family ties' and relationships; the Defendant's character, reputation, habits, and mental condition; the nature and gravity of the offenses and the potential penalties; and all other factors.

4

> The Defendant is charged with Rape as a level 3 felony; two (2) counts of Failing to Register as a Sex or Violent Offender, both level 6 felonies; Sexual Battery as a level 6 felony; Strangulation as a level 6 felony; Criminal Confinement as a level 6 felony; and Battery Resulting in Bodily Injury.
>
> Having considered all that it must, the Court Denies Defendant's Motion for Bond Reduction.

On July 20, 2023, Bartole appealed the order denying bond reduction, initiating Case No. 23A-CR-1709. On March 28, 2024, the Indiana Court of Appeals found that the order was not an abuse of discretion, noting the seven felony charges and the habitual offender enhancement and that a potential lengthy sentence tends to increase the risk that a defendant will fail to appear at trial. *Bartole v. State*, 233 N.E.3d 1008 (Ind. Ct. App. 2024). The appellate court further noted his criminal history, his probationary status when he committed the charged offenses, and his failure to attend a bench trial in 2020. *Id.*

Against this backdrop, Bartole argues that the Indiana bail scheme violates his right to substantive due process because it infringes of his right to liberty and that the strict scrutiny applies. In *United States v. Salerno*, 481 U.S. 739 (1987), the Supreme Court of the United States considered a similar challenge to the Bail Reform Act, 18 U.S.C. § 3141 *et seq.*[4] The Supreme Court reasoned that "the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed

---

[4] While similar in many respects, *Salerno* involved a challenge to the Bail Reform Act's authorization of ordering pretrial detention without bail, while, here, Bartole asserts that the Tippecanoe Superior Court has set bail in an amount he cannot afford.

punishment." *Id.* at 746. "To determine whether a restriction on liberty constitutes impermissible punishment or permissible regulation, we first look to legislative intent." *Id.* at 747. "Unless Congress expressly intended to impose punitive restrictions, the punitive/regulatory distinction turns on whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it." *Id.*

The Supreme Court first concluded that the Bail Reform Act was regulatory, finding that the legislative history did not indicate that Congress implemented the act as punishment but as a means to address the legitimate goal of preventing danger to the community. *Id.* at 747. The Supreme Court then concluded that the act was not excessive in relation to that goal, noting that it allowed pretrial detention without bail for only the most serious offenses, that it entitled arrestees to a prompt detention hearing, and that the Speedy Trial Act, 18 U.S.C. § *3161 et seq.*, limited the length of pretrial detention. *Id.* at 747-48.

Indiana codified its bail scheme in 1981 and allows trial courts to set bail bonds for the purposes of "ensuring the person's appearance at the appropriate legal proceeding, another person's physical safety, or the safety of the community." Ind. Code. § 35-33-8-1. As detailed above, the scheme requires trial courts to consider factors that are materially relevant to these purpose, including numerous references to whether they are relevant to the risk of flight or nonappearance. Though Bartole objects to the proposition that those faced with the possibility of a relatively lengthy sentence present a greater flight risk, the proposition is widely accepted. *See e.g., United States v. Taylor*,

31 F.3d 459, 468 (7th Cir. 1994) (noting with approval a trial court's finding that "a defendant who is facing a possible lengthy prison sentence has nearly half a million dollars in cash on hand was clearly material to the risk of flight."); *United States v. Jones*, 938 F.2d 737, 743 (7th Cir. 1991) (finding that "[f]light was almost certain to happen" when she faced a 30-year sentence with access to large sums of money); *United States v. Diaz*, 777 F.2d 1236, 1238 (7th Cir. 1985) ("The presumption [for pretrial detention without bail set forth in 18 U.S.C. § 3142(e)] reflects a congressional judgment, to which we are obligated to give weight, that persons facing heavy sentences for particular types of offenses are likely to jump bail."). The Tippecanoe Superior Court's local rules similarly required him to receive a prompt hearing, which Bartole received. And the Indiana Rules of Criminal Procedure limit the length of pretrial detention, subject to certain exceptions, to 180 days. Ind. R. Crim. P. 4(A). Consistent with *Salerno*, the court finds that the Indiana bail scheme did not violate his substantive right to liberty.

The court also finds that the bail determination did not violate his Eighth Amendment right against the imposition of excessive bail. "The right to release before trial is conditioned upon the accused's giving adequate assurance that he will stand trial and submit to sentence if found guilty." *Stack v. Boyle*, 342 U.S. 1, 5 (1951). "Bail set at a figure higher than an amount reasonably calculated to fulfill this purpose is excessive under the Eighth Amendment." *Id.* He is charged with violent crimes and faces a potentially lengthy sentence. *See* Ind. Code § 35-50-2-5 (sixteen-year maximum sentence for Level 3 felony); Ind. Code § 35-50-2-8 (twenty-year maximum sentence for habitual offender enhancement). He has a substantial criminal history and espouses no

7

significant ties to the community. The State courts found that he committed the charged offenses while on probation, and that, four years ago, he failed to appear at a bench trial. And, while Bartole appears to be indigent, bail bond set in a manner that requires the immediate payment of only $8,000 seems reasonably calculated to assure Bartole's presence at trial. On this basis, the court finds that Bartole has not stated a plausible claim that the Indiana bail scheme violated his right to substantive due process.

Bartole next asserts that the Indiana bail scheme violated his procedural right to due process. He alleges a plethora of shortcomings, including no individualized determination, no consideration of indigency, no right to review by another judge, irrebuttable presumption of a flight risk, mandated bail amounts, no opportunity to be heard, and no written decisions. However, review of Indiana law and the State court proceedings indicate that these alleged shortcomings are unfounded.

To start, the Tippecanoe County local rule sets only presumptive bail amounts based on the severity of the offense and expressly allows the court to deviate from those amounts based on evidence and the parties' arguments. Indiana statute sets forth numerous factors for the court to consider in making individualized bail determinations, including the defendant's employment status, financial condition, and several flight-related factors. The fact that the Tippecanoe Superior Court set an amount in between the presumptive amount and the amount requested by the prosecution, by itself, reflects an individualized determination. Indiana statute expressly allows criminal defendants to move for bond reductions, and denials are immediately appealable. The Indiana courts acknowledgment of the commonsense proposition that a

lengthy sentence "tends to increase" a criminal defendant's flight risk does not amount to an irrebuttable presumption.

Further, the electronic docket for the State courts reflects that Bartole attended no less than four separate hearings in which the Tippecanoe Superior Court considered whether to grant Bartole bail and on what terms. The Tippecanoe Superior Court also directly invited Bartole to lodge objections to the initial hearing order. Additionally, the Tippecanoe Superior Court considered his financial or employment status at numerous points, including when it initially appointed him counsel, in reaffirming that appointment at the second initial hearing, when he sought to appeal, and in the order denying bail reduction. *See* Ind. Code § 35-33-7-6 ("Prior to the completion of the initial hearing, the judicial officer shall determine whether a person who requests assigned counsel is indigent under section 6.5 of this chapter. If the person is found to be indigent, the judicial officer shall assign counsel to the person."). And Bartole received a written decision in the order denying bail reduction and on appeal. Consequently, the court finds that Bartole has not stated a plausible claim that the bail proceedings violated his right to procedural due process.

Bartole argues that the Indiana bail scheme violates his right to equal protection by favoring wealthy defendants and defendants charged with lesser offenses and that a strict scrutiny analysis applies. He also asserts that he is a member of a suspect class based on his status as a sexually violent predator. Bartole does not plausibly allege membership in a suspect class. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) (listing suspect classes as including race, alienage, nationality, gender,

and illegitimacy); *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1153 (7th Cir. 2019) ("Rational basis scrutiny applies to equal protection discrimination claims on the basis of age and wealth."); *Shaw v. Smith*, 206 F. App'x 546, 548 (7th Cir. 2006) (applying rational basis review to convicted sex offenders). As a result, rational basis review applies. *See Cleburne*, 473 U.S. at 440 ("The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.").

"Rational basis review requires the plaintiff to prove that (1) the state actor intentionally treated plaintiffs differently from others similarly situated; (2) this difference in treatment was caused by the plaintiffs' membership in the class to which they belong; and (3) this different treatment was not rationally related to a legitimate state interest." *Srail v. Village of Lisle, Ill.*, 588 F.3d 940, 943 (7th Cir. 2009). "To be considered similarly situated, a plaintiff and his comparators (those alleged to have been treated more favorably) must be identical or directly comparable in all material respects." *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010).

"Rational-basis review tolerates overinclusive classifications, underinclusive ones, and other imperfect means-ends fits." *St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.*, 919 F.3d 1003, 1010 (7th Cir. 2019). "[T]he absence of legislative facts' explaining the distinction on the record has no significance in rational-basis analysis." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993). "In other words, a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Id.* "[T]he burden is upon the challenging

party to eliminate any reasonably conceivable state of facts that could provide a rational basis for the classification." *Smith v. City of Chicago*, 457 F.3d 643, 652 (7th Cir. 2006).

It is not irrational to presume that those like Bartole charged with higher level felonies carrying the possibility of substantial penal consequences present more of a flight risk or that those like Bartole charged with serious violent offenses pose a greater danger to the safety of others. The effect of a criminal defendant's wealth on bail determinations is more nuanced and could cut either way. As a general proposition, it seems a wealthy defendant would have a greater ability to post bond and be more willing to part with a certain sum of money than an indigent defendant. Depending on the source of wealth, a wealthy defendant might also have greater ties to the community based on his or her employment status, professional reputation, or property ownership. In any event, the extent and nature of a defendant's wealth is rationally connected to the State's interest in securing trial appearances. Additionally, Bartole has none of these ties to the community, so a fair reading of Ind. Code § 35-33-8-4(b) would result in the trial court setting bond for a similarly situated wealthy defendant at a higher amount. Significantly, Bartole identifies no specific similarly situated wealthy defendant that received a more favorable bail determination. Moreover, even if Bartole won the lottery as he suggests, the prosecution would be entitled to seek and the trial court would have discretion to impose a higher bond amount given the material change in circumstances. As a result, Bartole may not proceed on a claim that the Indiana bail scheme violated his rights under the Equal Protection Clause.

Bartole further asserts that the defendants violated his constitutional rights by failing to inform him of his right to bail and bail-related procedures upon his arrival at the Tippecanoe County Jail in November. He cites no legal authority suggesting that the State has an affirmative duty to inform arrestees regarding the bail process, and the court can find none. *See Salem v. City of New York*, 811 F. App'x 678, 683 (2d Cir. 2020) ("At most, Salem alleges that correction officers failed to inform him of his bail status when they allegedly ignored his questions about what was happening with his case. Correction officers are tasked with ensuring the safety of correctional facilities and do not have a duty to inform inmates of legal updates in their cases."). It also appears that any claim relating to his arrival at the Tippecanoe County Jail is untimely. *See Behavioral Inst. of Ind., LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005) (two-year statute of limitations). As a result, Bartole may not proceed on such a claim.

Bartole asserts that the State and local public defender systems have violated his right to effective assistance of trial counsel. The Sixth Amendment entitles indigent criminal defendants to appointed trial counsel and all defendants to effective assistance of trial counsel. *Strickland v. Washington*, 466 U.S. 668, 685–86 (1984). However, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. Given that Bartole's criminal proceedings are ongoing, the court cannot assess whether they have produced a just result, and his claims that he has received ineffective assistance of counsel are premature. Moreover, the State court docket indicates that Bartole has not been

12

represented by public defenders since they withdrew and were replaced with private counsel in September 22, 2022. It further indicates that Bartole has represented himself in his criminal case since May 10, 2023, and has thus waived his right to counsel. *See United States v. Traeger*, 289 F.3d 461, 475 (7th Cir. 2002) ("Because representation by counsel and self-representation are mutually exclusive entitlements, the assertion of one right constitutes a de facto waiver of the other."). Therefore, Bartole may not proceed on claims that he received ineffective assistance of counsel.

Here, the court also pauses to observe that, despite Bartole's contention that he is not challenging or seeking to enjoin the ongoing State criminal proceedings, the complaint as a whole indicates that he seeks pretrial release on his own terms and further seeks the appointment of trial counsel whose performance meet his personal standards. As a practical matter, the court could not order the sweeping injunctive relief Bartole seeks without substantially interfering with the State criminal proceedings. For example, the allegations concern the trial court's failure to consider and afford weight to specific and purportedly indisputable arguments and articles of evidence; they also concern the manner in which the trial court conducts hearings and the failure to expound even further on the reasoning for its decisions in writing. The injunctive relief he seeks would also task this court with monitoring and correcting the performance of trial counsel throughout each stage of his pending State criminal proceedings. It is difficult to see how these claims could be any more intrusive. In sum, while the court has chosen to address these claims on the merits, they suffer from the same procedural pitfalls as his prior challenges to his custody and ongoing State criminal proceedings in

this court. *See e.g., Preiser v. Rodriguez*, 411 U.S. 475, 488 (1973) (habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement); *Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991) ("[I]f a prisoner claims to be entitled to probation or bond or parole, his proper route is habeas corpus, even though he is seeking something less than complete freedom."); *Stroman Realty, Inc. v. Martinez*, 505 F.3d 658, 662 (7th Cir. 2007) ("[F]ederal courts must abstain from enjoining or otherwise interfering in ongoing state court proceedings that are (1) judicial in nature, (2) involve important state interests, and (3) provide an adequate opportunity to raise the federal claims, as long as (4) no exceptional circumstances exist that would make abstention inappropriate.").

Finally, Bartole asserts that Judge Philip P. Simon has violated his constitutional rights by conspiring with Governor Holcomb, Federal Agent Stapleton and other unknown federal agents and agencies, Tippecanoe County Judges Randy Williams and Matthew Sandy for the past three years. He alleges that Judge Simon communicated with these entities in person, by Zoom, emails, telephone calls, texts, and letters. He alleges that Judge Simon has engaged in:

> Directing, encouraging, advising, facilitation communication to other actors on how to and that it would be okay to violate Bartole's constitutional rights. Specifically, to tamper with Bartole's mail, to intentionally withhold it to keep him from appealing his bond motion, to keep him from subpoenaing witnesses and documents for his criminal and civil cases, to withhold amended lawsuits to prevent him from suing federal actors, to Superior Court judges, to deny all of Bartole's critical dispositive motions because as long as the Simon defendant was at the helm (which he is in the Hammond Division) none of those actors would be held accountable in a suit or habeas corpus petition as the Simon defendant would make sure it never happens. Directly because of these

14

conspiratorial acts, all of Bartole's critical dispositive motions in the Superior Court have been denied, his appeal of his bond motion was denied because his briefs and motions were intentionally withheld by [Tippecanoe County Jail] employees, his federal lawsuit in the Indianapolis division was also denied because [jail] authorities intentionally withheld his amended complaint, various subpoenas for depositions, documents, and Bartole's criminal discovery thumbdrive were and is intentionally withheld from the courts, Bartole's public defender [took] this discovery thumb drives from him directly, plus countless other affirmative misconduct Bartole is suffering from at [the jail.]

In the last 3 years of experience with all the conspiratorial actors involved, Bartole knows beyond a doubt that the Simon (partly based on his experience with him in the legal arena) has undertaken this civil conspiracy against Bartole. Obviously, the Simon defendant has not gone ahead and provided Bartole with any information of this civil conspiracy. Thus Bartole's claims should not suffer – especially being Bartole is confined in a maximum deprivation of liberty setting at [the jail] with zero access to research or resources to uncover more of this conspiracy – simply for lack of evidence at this point. However, it is indisputable that with the recruitment of counsel, documents will be provided, depositions with be conducted by counsel and that the Simon defendant's civil conspiracy will come to more light than what's been illustrated here.

* * *

These agreements and directions were made/are made for every decision they made/affirmative misconduct inflicted on Bartole. For every mail intentionally withheld; for every decision to deny every motion Bartole put before the Superior Court, for every unconstitutional/tortious act the State and the [jail] authorities have inflicted on Bartole, the Simon defendant was made aware of it beforehand and/or directed communicated to them that he would protect them if Bartole tried to gain relief in his court, certainly explained/directed how to go about all these unconstitutional/tortious acts.

ECF 1 at 33-35.

"[A] court may dismiss a claim as factually frivolous only if the facts alleged are clearly baseless, a category encompassing allegations that are fanciful, fantastic, and

15

delusional." *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992). "As those words suggest, a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Id.* To recap, Bartole asserts that a federal judge -- whose only interaction with him involved presiding over his civil suits filed in this court and who has routinely presided over similar cases filed by uncounseled incarcerated individuals for more than two decades—communicated through every possible means with numerous federal and State actors, including law enforcement, State judges, and jail officials, with the purpose of thwarting Bartole's criminal and civil proceedings in other courts by pervasively monitoring and interfering with his conditions of confinement at the Tippecanoe County Jail and by relentlessly ensuring that his efforts in other courts were unsuccessful. He further maintains that these allegations are true beyond any doubt and are indisputable while also conceding that he has not one shred of evidence to support it. These allegations are "wholly incredible," to say the least. As a result, the court finds that this claim is factually frivolous and will not allow Bartole to proceed on it.

In sum, Bartole cannot proceed on this complaint because it does not state a claim upon which relief can be granted. "The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). "District courts, however, have broad discretion to deny leave to amend a complaint

16

where the amendment would be futile." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 572 (7th Cir. 2023). For the reasons previously explained, such is the case here.

For these reasons, this case is DISMISSED under 28 U.S.C. § 1915A.

SO ORDERED on August 15, 2024

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT